**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KENDALL TRAYMANE SPENCE,** | ) | |
| **ID # 1594392,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:14-CV-927-N BH)** |
| | ) | |
| **WILLIAM STEPHENS, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I. BACKGROUND**

Kendall Traymane Spence (Petitioner) challenges his conviction for murder in cause F-0859180-I. The respondent is William Stephens, Director of TDCJ-CID (Respondent).

**A.     Factual and Procedural History**

On October 30, 2008, the State indicted Petitioner for murder, enhanced by a prior conviction for burglary of a habitation. (Clerk's Record (C.R.):2-3). Petitioner pleaded not guilty and was tried before a jury in Dallas County, Texas, on August 10-12, 2009. (C.R.:4-5). The evidence presented at trial was summarized by the state appellate court as follows:

> Teniqua Williams worked with [Robert] Estis at Big Mama's Chicken and Waffles on Forest Lane at Audelia Road. Estis did not have a cell phone so he occasionally used Williams's cell phone. Appellant, known to Williams as "Shorty," called Williams's phone when he wanted to speak with Estis. Between 12:30 and 1:00 p.m. on the day of Estis's murder [August 12, 2008], Williams was sitting outside Big Mama's. Estis came up to her and said, "I'm tired of living like this. I try to stay out of these [n*****] way, but they keep messing with me." He took his shirt off, got some food, and left. A little while later, someone in a red Charger drove by and the

person in the front passenger seat stuck his head out the window, waved a gun, and asked for Estis. The driver turned left at the intersection onto Forest Lane. Several minutes later, Williams heard about four or five gunshots. At 1:53 that afternoon, Shorty called Williams and told her Estis "ain't here no more. He could have been working. He could have been at the mall. He could have been at the movies, but he chose to [f***] with a [n****] like me, so he ain't here no more. . . . he ain't breathing." Williams located and identified her cell phone number from the call detail report for appellant's cell phone. The record showed a phone call was made on appellant's phone to Williams's phone at 1:53 p.m. on August 12.

Frederick Natt grew up with Estis and thought of him like a brother. Natt also knew appellant who he called "Shorty." On August 12, 2008, appellant called Natt and threatened him, saying "You were running with your brother. You know your brother is saying this and that, so I'm going to [f***] both of y'all up. You know y'all are going to be dead. Decide however y'all want to do it." Appellant ultimately told Natt everything between them was okay but that Estis would be dead in ten to fifteen minutes. Natt's sister later called and told Natt Estis was dead.

Kecia Blissett, Estis's girlfriend, told the jury Estis said he was going to next door to the Snug Harbor Apartments to find appellant because appellant drove by Big Mama's, pointed a gun out the car window, and asked for Estis. Blissett waited a little while then followed him and, as she approached Snug Harbor, people told her that her boyfriend had been shot. She ran to the street in front of Snug Harbor and found Estis lying face down. He had been shot.

Jesus Orozco was leaving his apartment to run an errand when he saw two black men arguing. One man was not wearing a shirt; the other was saying, "Come on, [b****]," and motioning to the shirtless man to come towards him. Orozco could tell the man had something under his shirt but could not see what it was. When he returned to the apartments a few minutes later, he found out his son had been shot by a stray bullet and the shirtless man had been killed.

Angela Safimalli was talking with a friend in the Snug Harbor parking lot when they noticed a maroon Chrysler 300 with tinted windows. Safimalli noticed a shirtless man holding his hands in front of him, facing the car. She heard shots, saw a little smoke, and saw the man fall to the ground. The gunfire came from the passenger side of the maroon car. The car exited the parking lot and drove off.

Steve White was driving on Forest Lane to work when he saw a man with no shirt walking backwards in a parking lot. He was waving his arms like he was arguing with someone. White slowed down thinking the man might step into the street. He heard gunshots and saw the man fall to the ground. A red Chrysler 300 pulled around the man's body and onto the street behind White's car. White slowed down and got the license plate number before the car turned south on Audelia Road. He

2

then called 911, reported the shooting, and gave the license plate number of the car. He identified the license number he gave to police as the same number listed as registered to appellant on the vehicle registration report.

Detective Jerry Fonville took photographs of the crime scene. The following day, he processed appellant's car using gunshot residue kits on the front passenger seat and dashboard area. Vicky Hall, a trace evidence examiner at the Southwestern Institute of Forensic Sciences, tested the residue kits. She found gunshot residue particles on the dashboard, seat, seatbelt, window post, and front head liner on the front passenger seat of appellant's car. Detective Palmer investigated Estis's murder. Eyewitnesses identified the car leaving the scene, and one witness provided the license plate number which Palmer matched to appellant's car. He called appellant who agreed to meet with police at his attorney's office. After Palmer read appellant his Miranda warnings, appellant signed a consent form allowing police to search his Chrysler 300 and spoke with the officers. Appellant admitted driving down Forest Lane and seeing Estis that day. He claimed Estis walked into the parking lot of the Forest Hills apartment complex and threw his hands up. Appellant thought Estis was going to cross the street towards him but then he turned and walked away. According to appellant, he got in the car and drove off. Someone called him three to seven minutes later and told him Estis was dead. Appellant denied shooting Estis, having a firearm, or being near the Snug Harbor Apartments.

The following day, appellant again spoke with the officers. Appellant admitted being at the Snug Harbor Apartments and claimed he went there to sell some marijuana. He later admitted he was in the passenger's seat of his car and his girlfriend was driving. After they left the parking lot, he saw two girls and heard one girl say somebody had been shot. He denied having anything to do with Estis's murder, seeing Estis fall, or driving around his body. He also denied having a gun or hearing any shots.

*Spence v. State*, 2011 Tex. App. Lexis 1489, No. 05-09-00989-CR, slip op. at \*3-8 (Tex. App.–Dallas, February 28, 2011). The jury found Petitioner guilty, and after his plea of not true to the enhancement and evidence and argument regarding punishment, it found the enhancement true sentenced him to life imprisonment. (C.R.:37).

On direct appeal, Petitioner alleged that the trial court erred in denying his motion to suppress evidence and that the evidence was factually and legally insufficient to support his conviction. *Spence*, slip op. at \*2, 8-9. His conviction was affirmed on direct appeal. *Id*. He was

granted an extension until May 30, 2011, to file a petition for discretionary review (PDR).  He filed a PDR on June 8, 2011, but it was dismissed as untimely filed.  *Spence v. State*, PD-0428-11 (Tex. Crim. App. June 22, 2011).  He did not file a petition for writ of certiorari with the Supreme Court. Petitioner's state habeas application, which raised the same claims as his federal petition, was signed on April 30, 2012, and it was received by the state court on May 18, 2012. (State Habeas Transcript [WR-31,657-08] (S.H.Tr.) 7-11, 13).  On February 26, 2014, it was denied without written order on the findings of the trial court.  *Id*. at cover; *see also Ex parte Spence*, WR-31,657-08 (Tex. Crim. App. Feb. 26, 2014).

**B.**     **Substantive Claims**

On March 5, 2014, Petitioner mailed his federal habeas petition raising the following grounds for relief:

(1) The trial court erred in denying Petitioner's motion to suppress evidence obtained form an illegal arrest (ground one);

(2) The evidence was legally insufficient and factually insufficient and there was no evidence to support the conviction (ground two);

(3) The trial court erred in instructing the jury on the law of parties (ground three);

(4) The trial court erred in overruling Petitioner's hearsay objection to Teniqua Williams's testimony (ground four);

(5) His trial attorney provided ineffective assistance of counsel by:

-failing to inform the jury that two of the State's witnesses had been convicted of felonies;

-failing to play the recording of a 911 call that would have contradicted a witness's testimony;

-failing to properly challenge the admission of Petitioner's statements made during an illegal arrest;

-failing to bring to the jury's attention a detective's threat to arrest Petitioner's alibi witness if she went to court to testify; and

-failing to conduct an independent investigation, to interview the State's witnesses, to find or contact petitioner witnesses for Petitioner, and to properly review the enhancement allegations (ground five).

(Pet. at 6-7a).  Respondent filed a response to the first four grounds on July 11, 2014, and provided the state court records.  Petitioner filed a reply brief on July 31, 2014.  Respondent filed a supplemental response addressing ground five on December 11, 2015.

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

 Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### III.  SEARCH AND SEIZURE

In his first ground for relief, Petitioner asserts that the trial court erred in failing to suppress

evidence obtained after an allegedly illegal arrest.

It is well-settled that a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim.  *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976).  If a state has a process that allows an opportunity for full and fair litigation of Fourth Amendment claims, federal habeas review of those claims are barred, even if a defendant did not use the state process and litigate the claims. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006).  The State of Texas does have processes that allow defendants to litigate Fourth Amendment claims at the trial level and on direct appeal.  *Register*, 681 F.3d at 628.

Here, Petitioner raised his Fourth Amendment claims at the trial level, (Reporter's Record (R.) 2:117-36; R. 3:8-9, 165; R. 4:27, 28, 29), on direct appeal, *Spence v. State*, slip op. at *8-12, and at the state habeas level, (S.H.Tr. 7, 17-18).  His first ground is therefore barred from federal habeas review.

## IV.  SUFFICIENCY OF THE EVIDENCE

In his second ground for relief, Petitioner asserts that there was no evidence, legally insufficient evidence, and factually insufficient evidence to prove that he shot the victim.

Petitioner's claim that the evidence was factually insufficient to support his conviction is not cognizable in a federal habeas action.  *See Spencer v. Dretke*, No. 3:02–CV–1988–D, 2005 WL 696719, at *4 n. 2 (N.D. Tex. Mar. 23, 2005), recommendation accepted, 2005 WL 955969 (N.D. Tex. Apr. 26, 2005).  A claim that "no evidence" supports a conviction is the same as a challenge to the legal sufficiency of the evidence. *See Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002)

(noting that a claim of "no evidence" is the same as a claim of insufficiency of the evidence), vacated on other grounds, 541 U.S. 386 (2004); *United States v. Jackson*, 86 F. App'x 722, 722 (5th Cir. 2004) (per curiam) (applying insufficiency-of-the-evidence analysis to claim of "no evidence").

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.*

The state appellate court set out the *Jackson* standard and held the evidence was sufficient to support the conviction. *Spence v. State*, slip op. at *2-3, 8. The State presented evidence at trial that: (1) Petitioner was a passenger in his car driven by his girlfriend in the area of the shooting; (2) he was looking for the victim shortly before the shooting; (3) Petitioner threatened to harm the victim on the day of the shooting; (4) a witness heard gunshots and saw smoke coming from the passenger side of a car matching the description of Petitioner's car at the scene of the shooting; (5) another witness heard gunshots and saw the victim fall to the ground, and that witness identified the car's license plate, which matched that of Petitioner's car; (6) gunshot residue was found in the front passenger area of Petitioner's car; and (7) Petitioner called Teniqua Williams (Williams) and said the victim was "here no more" and was no longer breathing after the shooting.

Petitioner points to conflicting testimony from witnesses about the relative positions of the

8

shooter and the victim when the shots were fired and the medical examiner's testimony about the paths of the bullets.  He also argues that no witnesses saw gunshots coming from his car, no witnesses identified him at the scene of the shooting, and there was no gunshot residue on him.  The jury was the fact-finder responsible for weighing the evidence and resolving conflicts in testimony, and a court cannot substitute its view of the evidence for that of the fact-finder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).  After identifying the *Jackson* standard, the state appellate court denied this ground on direct appeal.  The state court's determination that there was sufficient evidence under the *Jackson* standard was not an unreasonable application of federal law, and Petitioner's second ground for relief should be denied.

## V.  JURY CHARGE

In his third ground, Petitioner asserts that the trial court erred in instructing the jury on the law of parties, and that the jury was erroneously permitted to convict him if it believed he acted alone or as a party, in violation of his right to due process.  Petitioner argues that he was charged as a principal actor, and there was no evidence he was a party to the offense.

To warrant federal habeas relief on the basis of a violation of due process due to an error in the trial court's instructions to the jury, the court must find that the jury charge error rendered the entire trial fundamentally unfair.  *See Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir.1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154–55 (1977)).  The question is whether the alleged invalid instruction "by itself so infected the entire trial that the resulting conviction violated due process, not merely if the instruction was undesirable, erroneous, or universally condemned." *Wright v. Director*, TDCJ, No. 9:11–CV–204, 2012 WL 7159911, at * 20 (E.D. Tex. Oct.2, 2010) (citing *Henderson*, 431 U.S. at 155)), *rep. and rec. adopted*, 2013 WL 607850 (E.D. Tex. Feb.19,

2013).

In addressing this issue, the state habeas court reasoned:

> The applicant claims error in the jury charge with the inclusion of the law of parties. Without addressing the question of error in the charge, it is clear from the record as set out in the Court of Appeals opinion that the applicant was guilty as the principal actor therefore error, if any, in the parties charge was harmless. *Ladd v. State*, 3 S.W.3d 547 (Tex. Crim. App. 1999). This allegation is without merit.

(S.H.Tr. 54.)

Petitioner does not argue, much less establish, that the state court's denial of this claim is a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Because the evidence supported his conviction as the person who shot and killed the victim, the instruction on the law of parties, if error, was harmless. *Lawry v. Johnson*, No. 3:00-CV-603-L, 2001 WL 733423, at *3 (N.D. Tex. June 16, 2001) (erroneous inclusion of jury instruction on the law of parties is harmless when the evidence supports defendant's guilt as a principal actor). The state court's determination that of harmless error was not an unreasonable application of federal law, and Petitioner's third ground should be denied.

## VI. HEARSAY

Petitioner's fourth ground contends the trial court erred in overruling his hearsay objection to Williams's testimony that Petitioner called her after the shooting and made incriminating statements about the murder. He asserts that she did not identify him, and the State did not prove he made the telephone call.

The state habeas corpus found this claim was procedurally barred by *Ex parte Banks*, 769 S.W.2d 539 (Tex. Crim. App. 1989), because it should have been raised on direct appeal and could

not be considered on habeas corpus.   (S.H.Tr. 56).   Respondent does not argue this claim is procedurally barred, however.

A trial court's evidentiary rulings are matters of state law which are not subject to re-examination by the federal courts.   It is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).   "[A] federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir.1997).

Here, Petitioner does not contend the alleged erroneous evidentiary ruling violates a specific constitutional right.   The trial court ruled that the evidence was not hearsay based on state law. Williams identified the caller as "Shorty," (R. 3:50-52), and "Shorty" was Petitioner's nickname, (R. 3:66).   Under Texas Rule of Evidence 801(e)(2), a statement by a criminal defendant offered against him is not hearsay.   *See Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). Petitioner's fourth ground is without merit and should be denied.

## VII.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his fifth ground, Petitioner claims that his trial counsel was ineffective by failing to: (1) inform the jury that two of the State's witnesses had been convicted of felonies; (2) play the recording of a 911 call that would have contradicted a witness's testimony; (3) properly challenge the admission of Petitioner's statements during an illegal arrest; (4) bring to the jury's attention a detective's threat to arrest Petitioner's alibi witness if she went to court to testify; and (5) conduct

an independent investigation, interview the State's witnesses, find or contact witnesses for Petitioner, and properly review the enhancement allegations.  (Pet. at 7a.)

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense.  *See Strickland*, 466 U.S. at 687.  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *Id*. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id*. at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing

12

whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466

U.S. at 695-96.

## A.   <u>Witnesses' felony convictions</u>

Petitioner contends trial counsel was ineffective for failing to impeach Williams and Angela

Safimalli (Safimalli) with prior felony convictions.   He claims those witnesses had felony

convictions for credit card abuse, fraud, and/or theft.

The state habeas court found that Petitioner did not prove the witnesses had prior convictions

or that the convictions were admissible for impeachment under state law:

> His first complaint involves the failure of counsel to introduce evidence that
> two of the eyewitnesses had prior criminal convictions.   The applicant has not
> offered any evidence to prove this allegation nor has he established that the prior
> convictions, if any, were admissible under the Tex. R. Evid. R. 609(a).  The applicant
> has the burden of proof in a writ of habeas corpus.  <u>Ex parte Alexander</u>, 598 S.W.2d
> 308 (Tex. Crim. App. 1980).   The applicant has failed to meet that burden.   This
> allegation is without merit.   Further, in light of the overwhelming evidence of guilt
> in this case, the court cannot say that the outcome of the proceeding would have been
> different but for counsel's performance.  <u>Strickland v. Washington</u>, 466 U.S. 668,
> 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Hernandez v. State</u>, 726 S.W.2d 53 (Tex.
> Crim. App. 1986).  This allegation is without merit.

(S.H.Tr. 54-55.)

"[A]bsent evidence in the record, a court cannot consider a habeas petitioner's bald

assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else

contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011

(5th Cir. 1983).  Petitioner has not shown that the witnesses had prior felony convictions, or that the

state habeas court unreasonably determined that he had not proven any  convictions.

## B.   <u>911 call</u>

Petitioner asserts counsel failed to introduce Safimalli's 911 call, which would have

contradicted her testimony.  He claims she said in the call that she did not know where the shots came from, and that she thought the suspects fled in a Cadillac.

The state habeas court found:

The applicant next claims counsel was ineffective for not playing the tape of the 911 call to impeach the testimony of eyewitness Angela Safimall[i].  The court finds there was sound legal reasoning for not playing the tape.  The emotional distress of having witnessed the shooting could have been more harmful than the testimony of the witness.  Again, in light of the overwhelming evidence of guilt in this case, the court cannot say that the outcome of the proceeding would have been different but for counsel's performance. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App. 1986). This allegation is without merit.

(S.H.Tr. 55.)

Counsel cross-examined Safimalli about contradictions between her testimony and her statement to the police.  (R. 3:107.)  He brought out that her statement said she did not notice where the shots were coming from, she did not refer to the car after she first stated she noticed it, and she did not say anything about shots coming from the car.  (Id. at 107-08,109.)  He called her testimony into question without playing the recording, which would have shown her emotional distress at the time of the 911 call.  Petitioner has not overcome the presumption that counsel made a sound strategic decision not to use the 911 call.  He has not shown that the state court's decision on this ground was an unreasonable application of federal law.

## C.    Petitioner's statements

Petitioner contends counsel failed to challenge the admission of his statements after the allegedly illegal arrest.  He also asserts a detective who was not present at the arrest testified, and that counsel should have called the arresting officers as witnesses.

On appeal, the state appellate court addressed the suppression issue:

In his third issue, appellant claims the trial court abused its discretion by denying his motion to suppress.  Appellant contends his arrest was illegal and the trial court should not have allowed his oral statements or any evidence found during the search of his car.  At the hearing on the motion to suppress, appellant specifically argued the only issue before the court was the admissibility of the evidence recovered from appellant's vehicle, and that the statements did not "matter."  Thus, we ad-dress only the admissibility of any evidence obtained from the search of appellant's car.  *See Castillo v. State*, 79 S.W.3d 817, 827-28 (Tex. App.—Dallas 2002, *pet. ref'd*) (defendant may not raise complaint on appeal when defendant failed to bring complaint to trial court's attention during trial).

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009).  We uphold a trial court's decision to admit evidence as long as the result is not outside the zone of reasonable disagreement.  Id.

The "fruit of the poisonous tree" doctrine generally precludes the use of evidence, both direct and indirect, obtained following an illegal arrest. *See Monge v. State*, 315 S.W.3d 35, 40 (Tex. Crim. App. 2010) (citing *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).  Evidence sufficiently attenuated from the unlawful arrest is not considered to have been tainted.  *Id*.  The State has the burden of proving attenuation.  *Id*.  In deciding whether the evidence from appellant's car, which was obtained after appellant consented to the search of his car, was sufficiently attenuated as to permit its use at trial, we consider (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct.  *Id*. (citing *Brown v. Illinois*, 422 U.S. 590, 603-4, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975)).

At the hearing on the motion to suppress, Detective Palmer stated he had information from the beginning of the investigation that appellant might be involved Estis's death.  Palmer contacted him and told him they needed to talk about the case.  He also told appellant he had not yet decided whether to arrest appellant.  They arranged to meet at appellant's attorney's office.

On the day of the meeting, appellant drove to his attorney's office where he was met by Palmer and two other police officers.  They escorted appellant into the office where he spoke with his attorney outside the officers' presence.  Palmer then informed appellant he was investigating Estis's murder and, in the course of doing so, discovered appellant had outstanding warrants.  During the hearing, Palmer said appellant was legally detained and not free to leave at that time. Palmer read appellant his Miranda rights.  Appellant indicated he understood those rights and was waiving them.  Palmer said he took a voluntary statement and asked appellant to consent to a search of his vehicle.  He read the consent form to appellant and asked

15

him to agree to the search.  Appellant did so and signed the form, as did appellant's attorney.

Palmer drove appellant to the homicide office where he then learned the outstanding warrants "were no good."  He prepared a probable cause affidavit and an arrest warrant.  According to Palmer, at the time they arrived at the homicide office, appellant was detained for murder and Palmer made the decision he would be charged with murder that night.

Appellant complained that, because the Dallas Sheriff Department warrants were not valid, his arrest at his attorney's office was illegal and the consent to search his car as well as the evidence found as a result of the search should have been excluded. After examining the record and considering the four factors set out in *Brown* and followed in *Monge*, we disagree. Appellant voluntarily agreed to meet Palmer at his attorney's office.  He spoke with his attorney outside the presence of the officers. When he did speak with the officers, his attorney was present.  Palmer read appellant his Miranda rights.  After stating he understood those rights and was waiving them, appellant consented to the search of his car.  Although detained at the time he gave the consent, he had the opportunity to first consult with his attorney.  In fact, both appellant and his attorney signed the consent form.  Finally, Palmer did not know at the time he detained appellant that the sheriff's department warrants were no good; thus, his actions were neither flagrant or abusive examples of official misconduct. Weighing all four factors together, we conclude the consent to search was attenuated from appellant's detention or arrest on the sheriff's department warrants.  We overrule appellant's third issue.

*Spence v. State*, slip op. at *8-12.

The state habeas court subsequently also rejected Petitioner's suppression claim:

> The applicant claims that counsel did not properly challenge the illegal arrest and subsequent evidence.  The applicant does not state how counsel was deficient.  The fact is, the issue was fully presented in court and reviewed on direct appeal.  There is nothing in this writ that causes this court to believe the outcome of the proceeding would have been different had trial counsel presented the motion to suppress in a different manner.  Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Hernandez v. State, 726 S.W.2d 53 (Tex. Crim. App. 1986).  The applicant has the burden of proof in this matter.  The applicant has failed to meet that burden.  Ex parte Alexander, 598 S.W.2d 308 (Tex. Crim. App. 1980).  This allegation is without merit.

(S.H.Tr. 55.)

16

Petitioner does not specify the statements he claims counsel should have sought to suppress. The state appellate court observed that after Petitioner was arrested on the warrants, but before the discovery that the warrants were invalid, he gave a statement to police in which:

> he admitted driving down Forest Lane and seeing Estis that day. He claimed Estis walked into the parking lot of the Forest Hills apartment complex and threw his hands up. Appellant thought Estis was going to cross the street towards him but then he turned and walked away. According to appellant, he got in the car and drove off. Someone called him three to seven minutes later and told him Estis was dead. Appellant denied shooting Estis, having a firearm, or being near the Snug Harbor Apartments.

*Id.*, slip op. at *7. After officers learned the warrants were invalid, Petitioner was arrested for murder. He then provided officers with another statement. He does not claim his arrest for the murder was invalid, so he does not claim that the second statement should have been suppressed. In that second statement, Petitioner admitted being at the Snug Harbor Apartments and being in the passenger's seat of his car while his girlfriend was driving. *Id.*

Moreover, the state court of appeals held that any taint from the apparently invalid initial arrest had been attenuated when Petitioner gave consent to search his vehicle because he voluntarily agreed to meet the detective at his attorney's office; he consulted with counsel outside the presence of the officers; counsel was present when Petitioner spoke with the officers; he was read his Miranda rights; and he stated he understood those rights and was waiving them. Petitioner does not challenge the state appellate court's attenuation analysis regarding evidence seized pursuant to his consent to search his car after the allegedly invalid initial arrest. That same attenuation analysis also applies to Petitioner's first statement. Any taint from the allegedly invalid initial arrest was attenuated when Petitioner gave his first statement to the police.

As for Petitioner's contention that counsel should have called the arresting officers as

witnesses, complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d at 602. Petitioner has not shown what the arresting officers' testimony would have been.

Petitioner has not shown the state court's rejection of his claim was an unreasonable application of federal law.

D.      **Detective's threats**

Petitioner asserts a witness, Tonnette Stepheason (Stepheason), told Detective Palmer that she was driving Petitioner's car on the day of the offense, and he did not fire any shots. He claims the detective went to her home and threatened to arrest her if she testified for Petitioner, that he called the detective from jail, and that the detective confirmed what he told Stepheason. Petitioner claims counsel had a copy of the recording of that call.

The government violates due process when it substantially interferes with a defense witness's decision to testify without violating the defendant's due process rights. *Knott v. Quarterman*, 253 F. App'x 376, 381 (5th Cir. 2007). "[T]o demonstrate such a substantial interference and thus a due process violation, the defendant must show a causal connection between the governmental action and the witness's decision not to testify." *Id.*

The state habeas court observed that Petitioner did not produce the evidence of the phone call with his writ petition.  (S.H.Tr. 56.)  It also concluded that in light of the overwhelming evidence of guilt, the introduction of Stepheason's testimony would not have changed the outcome of the proceeding, so Petitioner was not entitled to relief under *Strickland*.

Petitioner has not supported his allegation with the tape recording or an affidavit from Stepheason, so he has not shown he is entitled to relief on his unsupported assertions.  *See Ross v. Estelle*, 694 F.2d at 1011.  He also does not allege that Stepheason would have testified, and that she was intimidated into not testifying.  Nor does he allege there was no good-faith, objective basis for the threat.  He has not shown the state court erred in its determination that he did not demonstrate prejudice, in light of the other evidence.  Because of the testimony of witnesses at the scene of the crime and the gunshot residue found in the passenger side of the car, Petitioner has not shown the state court's determination of no prejudice was an unreasonable application of federal law.

## E.   <u>Investigation</u>

Petitioner claims counsel failed to investigate, interview witnesses, seek out potential defense witnesses, or review the enhancement allegations.  He contends counsel did not interview Safimalli, Stepheason, or two witnesses who saw the murder but did not implicate him.

The state habeas court found the claim lacked merit.  It concluded that Petitioner had not shown what would have been discovered with further investigation.  (S.H.Tr. 56.)

As discussed, counsel cross-examined Safimalli about the inconsistencies between her testimony and her statement to the police.  (R. 3:107-09.)  Petitioner does not identify the two witnesses he claims did not implicate him, and he does not state what information they could have provided counsel.  Although he claims counsel did not interview Stepheason, he also claims that

counsel had a copy of a phone recording about the detective's threats to Stepheason.  He has not

shown that counsel was unaware of Stepheason or the threats.  He does not explain what counsel

should have discovered through an investigate of the enhancement allegations.

Petitioner has not shown what further investigation would have accomplished, and he has

not demonstrated deficient performance or prejudice in that regard.  *See Harrington v. Richter*, 131

S.Ct. 770, 789–90 (2011) ("An attorney need not pursue an investigation that would be fruitless.").

He has not shown that the state court's decision was an unreasonable application of federal law.

## VIII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with

prejudice.

**SO ORDERED** this 2nd day of May, 2016.



IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE